In the United States District Court
Eastern District of Texas
Sherman Division

| | |
|---|---|
| Tonja Schult § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. _____ |
| § | |
| Compass Management Holdings, § | |
| LLC f/k/a Compass RE Texas, LLC § | |
| § | |
| § | |
| Defendants. § | |

**Plaintiff's Original Complaint**

Plaintiff Tonja Schult ("Schult" or "Plaintiff") files this Original Complaint against Compass Management Holdings LLC f/k/a Compass RE Texas, LLC ("Compass" or "Defendant") and shows:

**Parties**

1. Plaintiff Tonja Schult is an individual citizen of Texas.

2. Defendant Compass Management Holdings LLC is a foreign limited liability company doing business in Texas. It previously did business as Compass RE Texas, LLC, which is a domestic limited liability company doing business in Texas. It may be served by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas TX 75201-3136.

**Venue and Jurisdiction**

3. Venue is proper in Denton County because Compass does business in Denton County and because Plaintiff performed her job duties in Denton County.

4. This Court has federal jurisdiction over the claims asserted under the Equal Pay Act, 29 U.S.C. § 206(d).

## Factual Background

5. Compass is a residential real estate brokerage company with over three hundred offices across the United States.

6. Compass hired Schult in September 2020. Schult has over 26 years of experience in real estate and over 11 years' experience in real estate management. When Compass hired Schult, the company was known as Compass Re Texas LLC d/b/a Compass. It later changed to Compass Management Holdings LLC.

7. Bryan Pacholski, who had worked with Schult at a past company, recruited Schult.

8. Compass hired Schult to be a Sales Manager in Austin, Texas. Pacholski promised Schult she would soon be promoted to Managing Director and would receive a pay raise. Schult's original base pay when Compass hired her was $170,000 with eligibility for a $20,000 bonus. Schult accepted the position in Austin and successfully turned the Austin office around. Schult received a positive performance review because of her work in Austin.

9. Schult began working in Austin on September 14, 2020. At that time, J. Rene Walker (female) and Schult were the only Sales Managers for over five hundred agents.

Schult's position was remote, but she drove to Austin several times a month. Walker asked Schult why she drove to Austin for the Sales Manager position when Schult could be a Sales Manager in Dallas. Schult told Walker she felt it was a good career move with the promotion coming her way. Walker then complained to Pacholski because Walker believed she would get the promotion. Pacholski then called Schult and told her she should keep the promised promotion quiet, but that it was still coming to her.

10. Schult later heard from two other male Sales Managers, Greg Ward and Blake Roberts, that Pacholski told them Schult would not be promoted to Managing Director. Schult then told Pacholski she could not move to Austin with its high cost of living if she would not be promoted. Pacholski told Schult she was too valued by Compass, and it would not let her go.

11. About two months later, Compass asked Schult to take the position as Sales Manager in the Plano office. Schult accepted this position.

12. Compass then promoted Greg Ward (male) to Managing Director in Austin.

13. Compass gave Schult a glowing performance review at the end of 2021 and a bonus of $22,000, which was more than Compass had offered in her offer letter.

14. When Compass made Schult the Sales Manager in Plano in June 2021, Schult replaced a male employee going out on FMLA due to severe health issues.

15. In October 2021, Pacholski told Schult he was firing the Sales Manager in Frisco. After he did so, Schult took on running the Frisco office in addition to the Plano office on an interim basis until Compass hired a new Sales Manager for Frisco.

16. Schult wanted to be moved to the Frisco office because it was a larger office with much more potential for her career growth. However, Pacholski said he thought it would be too hard on the smaller Plano office for her to move to the Frisco office.

17. When Compass opened a Flower Mound office, Schult asked Pacholski if she could be transferred to the Flower Mound office because she would have a much shorter commute.

18. Instead of moving Schult to Flower Mound, Pacholski told her he had already picked out a candidate for Flower Mound because Compass needed to diversify the team. Schult asked what he meant by that. Pacholski told her that Compass had four female and two male Sales Managers, all of whom were white. He said Compass needed to diversify, so it hired a Black male to be Sales Manager for Flower Mound.

19. Compass agreed to pay the Black male Sales Director for Flower Mound a base salary of $250,000 and gave him $100,000 in equity. This employee had far less experience than Schult. The employee had only 13 years of experience in real estate and only 6 years of experience in management.

20. Compass later terminated that employee. Pacholski told Schult another Sales Manager did not like the Flower Mound employee and openly questioned whether

Compass only hired and paid the employee more than other Sales Managers because he was a Black man.

21.     Schult then asked Pacholski if the Black male employee was paid more than the other Sales Managers such as herself. Pacholski denied it.

22.     By February 2022, Compass gave Schult responsibilities for both Plano and Flower Mound offices. However, Compass did not raise Schult's salary to match what had been paid to the Black male employee as Sales Manager for the Flower Mound office—even though Schult was now covering two offices.

23.     Schult has a history of health issues that Compass and Pacholski were well aware of. Over seven years ago, Schult had a heart attack at age 42. Two aneurysms were found in her heart valve shortly thereafter. Stress is not good for Schult's health. Pacholski knows this.

24.     In July 2022, Schult had another serious health issue related to her vision. When in natural sunlight, her vision would diminish drastically with shooting pain in her eye. While Schult consulted multiple doctors and specialists to identify the cause of the problem, Schult continued to perform her job duties with no issues. Schult went to the office every day and wore very dark sunglasses when in natural light.

25.     In July 2022, Pacholski kept insisting that Schult take a leave of absence due to her health issues. Schult refused to do so. Schult did not want to take a leave of absence because, at Compass, the talk was always that if you took a leave, you were the first to

get fired. Schult was adamant she did not want to take a leave of absence and did not need one. Schult could perform her job duties and was adamant she did not want to involve People & Culture.

26. However, Pacholski went to People & Culture for Schult and had a Zoom meeting scheduled that Schult had to attend. In the meeting, Schult was advised of her medical leave options. However, Schult refused to take medical leave.

27. Shortly after that meeting, Compass demoted Schult. Compass took the Plano Sales Manager duties away from Schult and put a new male Sales Manager in Plano. Going forward, Schult had only the Flower Mound office.

28. Schult asked Pacholski about this demotion. Pacholski told her it was his way of protecting Schult. Pacholski also told Schult the Plano office would merge with the Frisco office, and he needed an "escape plan" for a male Sales Manager on a Performance Review Plan. Pacholski assured Schult he had "bigger and better plans" for her.

29. Pacholski continued to regularly ask Schult about her health. Schult assured him she was fine and could perform her job duties.

30. The Flower Mound office grew under Schult's watch by about 15% and she flourished as Sales Manager with her team in Flower Mound.

31. On September 15, 2022, Schult went to an All-Employee meeting in the Southlake office. During the day, she told Pacholski that another real estate company had

been recruiting her heavily. Pacholski asked if Schult was going to leave. Schult told him she was not even though the other company paid more. Over the next few months, Pacholski kept asking Schult if she was going to leave Compass. Schult repeatedly told him she was not leaving.

32. Pacholski continued to ask Schult what it would take to keep her at Compass. Though she laughed and told him she was not going anywhere, Pacholski asked her what it would take to make sure she never talked to the other company again.

33. To stop the conversation, Schult told him she wanted to get paid what the male Sales Managers got paid. Schult told him she had fixed four offices for him, while driving all over the country to do it without complaint. She asked him to give her a raise. He told Schult it would be done and promised her the raise would happen. After that conversation, Schult called him and told him she also wanted the title of Senior Sales Manager because she had more experience than the other Sales Manager.

34. Pacholski told Schult he would fight for this for her, and she deserved it.

35. In December 2022, Schult had a recurrence of issues related to her heart. On December 29, 2022, Schult had a Zoom meeting with Pacholski to go over 2023 projected numbers for the Flower Mound office. Pacholski asked her how her health was doing and asked if there was anything she needed from him. Schult told Pacholski that her health was fine, but that what he promised her—the pay raise and the title change—would be nice.

36. On January 1, 2023, Schult had to go to the Emergency Room due to heart issues. Pacholski knew that she had to make this Emergency Room visit.

37. Compass fired Schult five days later on January 6, 2023. Compass told Schult her job was terminated effective January 13, 2023. Compass told Schult that the decision to terminate Schult was not performance based and that it was based purely on company profitability.

38. Though Schult had worked for the entirety of 2022, Compass told Schult it would not pay her the 2022 bonus.

39. Many Compass agents and staff members were shocked that Compass terminated Schult. One agent, Swapnil Sharma, called Robert Refkin, the Compass CEO, to question Schult's termination. Sharma told Refkin that Schult was the best Sales Manager she ever had. Refkin then contacted Regional Vice President Rachel Hocevar and Pacholski to ask why Schult was terminated.

40. Pacholski then told Sharma that Schult was terminated for performance reasons. This was false and not what Compass told Schult in her termination meeting. Other people told Schult that Pacholski said she was terminated for performance reasons.

41. Because Pacholski was Schult's manager, he would have been the person to recommend which employees should be terminated first. During the time Schult worked for Compass, she knew from earlier reductions in force that Compass had the manager of a division do a Bottoms Up Report to identify the employees to be let go.

42. Compass terminated Schult—a high performer—while retaining the male Sales Manager of the Plano office who was on a performance plan and another employee who had been reprimanded in December 2022.

43. Schult's employment ended on January 13, 2023.

44. Compass was holding a large Ninja Selling Conference on January 23, 2023. Schult had been heavily involved in the preparation for the conference and still wanted it to succeed. She contacted Daniel Pesis, the person over Customer Success, to ask if he needed her help and offered to volunteer her time to help make the conference a success. Pesis was happy to have Schult participate.

45. When Pacholski learned that Schult was at the conference, he contacted Regional Vice President Rachel Hocevar. Pacholski falsely claimed Schult was there to recruit agents. Pacholski insisted Schult be required to leave the conference immediately. Pesis called Schult and told her what Pacholski had done. Schult was deeply upset as she was only trying to be helpful and told him she felt Pacholski was trying to ruin her future.

46. Compass required Schult to sit outside the conference for about four hours while it investigated this issue. Compass finally told Schult there were holes in Pacholski's story, and it was sorry to have upset Schult. Compass then allowed Schult to continue to participate in the conference.

47. Schult then told Compass she did not understand why Pacholski was trying to ruin her future. She noted she had always been his friend and protected him from

being fired. Schult told Compass she probably had 15 HR violations on him alone and she felt she had done his job 50% of the time. Schult was told that Pacholski had been trying to bring her down for a long time.

48. Compass paid Schult and other female Sales Managers significantly less than male Sales Managers in base salary, bonus opportunity and equity during the time Schult worked for Compass.

49. Schult has over 26 years' experience in real estate and over 11 years of experience in management. Compass paid Schult $170,000 base salary and raised it to $177,000 in her second year. Compass paid Schult a $22,000 bonus in 2021. However, Compass did not pay Schult a 2022 bonus due to her termination on January 13, 2023—despite Schult having worked the entire calendar year. Schult was given $30,000 in equity over the four years.

50. Compass paid the Black male Sales Manager who preceded Schult in Flower Mound far more although he had far less experience than Schult. He had only 13 years' experience in real estate and only 6 years in management. He received a base salary of $250,000 when hired and was given equity of over $100,000 over four year. Schult believes his bonus potential was $30,000.

51. Compass did not raise Schult's salary to match that of the Black male Flower Mound Sales Director when Schult took on joint responsibility for Plano and Flower Mound. Despite covering two offices as Sales Manager, Compass paid Schult less than

the Black male Sales Manager who covered only one office. Upon information and belief, Compass paid Schult less than other Sales Managers at the same time.

52. Compass did not raise Schult's pay to match that of the Black male Sales Director when Schult took on sole responsibility for Flower Mound—even though she had more industry experience than him and more tenure at Compass.

53. Another male Sales Manager had 21 years' experience in real estate. Upon information and belief, his salary is about $270,000. Schult does not know what his bonus is or his equity awards, but believes they were greater than that given to Schult.

54. Compass had another male Sales Manager with 21 years in real estate with little or no management experience. This employee had been at Compass the same amount of time as Schult. Upon information and belief, Compass paid this employee a base salary was over $200,000. Schult does not know his bonus or equity but believes both were greater than Compass gave Schult despite their similar level of experience.

55. Compass had three female Sales Managers in addition to Schult. All were paid a base salary of about $110,000 to $150,000 with bonus potential of $20,000 and equity between $20,000 to $30,000 over four years. All were paid less than their male peers.

## Causes of Action

### Equal Pay Act Claim

56. Schult incorporates the preceding paragraphs as if fully restated.

57. Compass employed Schult as a Sales Manager. Compass also had male Sales Managers. The Sales Managers share the same job duties and perform the same tasks for Compass even though they are at different Compass offices. The work of the Sales Manager requires equal skill, effort and responsibility and is performed under similar working conditions.

58. Compass paid Schult less than the male Sales Managers, including her male predecessor in the Flower Mound office and her male successor in the Plano office, although the she performed equal work on jobs, the performance of which requires equal skill, effort and responsibility and is performed under similar working conditions.

59. Schult's base salary was less than some of her male peers. Upon information and belief, Schult's bonuses and equity awards were less than some of her male peers.

60. Compass has no legitimate non-discriminatory basis for the disparity in compensation between that paid to Schult and the male Sales Managers.

61. Because Compass pays different wages to employees of opposite sexes for equal work on jobs, the performance of which required equal skill, effort, and responsibility and which were performed under similar working conditions, Compass violated the Equal Pay Act, 29 U.S.C. § 206(d).

62. Schult has been damaged by Compass' unequal payments of wages and seeks to recover all damages she has suffered because of its violations of the Equal Pay Act

including back pay, liquidated damages, attorney's fees and costs, and pre-judgment and post-judgment interest under 29 U.S.C. § 216(b).

## Equal Pay Act Retaliation Claim

63. Schult incorporates the preceding paragraphs as if fully restated.

64. During her employment, Schult engaged in protected activity by complaining of pay disparity between male and female Sales Managers. Schult complained about pay disparities to Pacholski during her employment. Schult asked Pacholski to raise her pay to match that of her male peers.

65. Compass took no action in response to Schult's complaints to fix the pay disparity. Instead, Compass continued to pay male Sales Managers more than female Sales Manager such as Schult.

66. Compass fired Schult on January 6, 2023 with a final date of employment as of January 13, 2023.

67. Compass selected Schult for the termination because of Schult's complaints about pay discrimination and her request that her pay be raised to match that of her male peers.

68. Compass' stated reason for terminating Schult is a pretext for retaliation. Compass terminated Schult although she was a high performer while keeping other employees with poor performance records but who had not engaged in protected activity.

69. Compass terminated Schult within months of her protected activity.

70. But for her protected activity, Compass would not have included Schult in the list of employees to be terminated. Pacholski knew of Schult's protected activities and, as the Division Manager, Pacholski was involved in determining who should be terminated in January 2023.

71. Compass' actions in firing of Schult because of her protected activity in retaliation for her complaint about pay disparities violated the Equal Pay Act, 29 U.S.C. 215(a)(3).

72. Schult has been damaged by Defendants' retaliatory acts and seeks to recover all damages she suffered because of Defendants retaliation, including back pay, front pay, compensatory damages, punitive damages, attorney's fees and costs, and pre-judgment and post-judgment interest under 29 U.S.C. § 216(b).

### Notice of Pending Claim for Sex Discrimination, Disability Discrimination and Retaliation Claims under Title VII and Texas Labor Code Chapter 21.

73. Schult incorporates the preceding paragraphs as if fully restated.

74. Schult filed a Charge of Discrimination with the EEOC on February 24, 2023, which is automatically dual filed with the Texas Workforce Commission Civil Rights Division.

75. Schult cannot yet bring a claim under Title VII or Texas Labor Code Ch. 21 because she has not yet exhausted her administrative remedies for such claims. However, Schult tells the Court she intends to seek her Notice of Right to Sue from the EEOC when she can legally do so. After Schult receives that Notice of Right to Sue from the EEOC, Schult intends to seek leave to amend this Complaint to assert sex discrimination, disability discrimination and retaliation claims under Title VII and Texas Labor Code Chapter 21.

## Jury Trial

76. Schult demands a trial by jury.

## Prayer

WHEREFORE, Plaintiff Tonja Schult prays this Court enter a judgment declaring the acts and practices of Defendant violate the Equal Pay Act and award Plaintiff the relief sought and enter such other and further relief to which Plaintiff is justly entitled.

Respectfully submitted,

/s/ Karen K. Fitzgerald
Karen K. Fitzgerald
State Bar No. 11656750
Fitzgerald Law, PLLC
8150 N. Central Expy, 10th Floor
Dallas TX 75206
214.265.9958 (direct dial)
karen@fitzgerald.law

Attorney for Plaintiff Tonja Schult

## Consent to Join Lawsuit

I give my consent to participate in this lawsuit alleging a claim under 29 U.S.C. § 206(d).

/s/ Tonja Schult
Tonja Schult